IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONALD NEIL WILKERSON, as          )
Administrator of the Estate         )
of Sandra Hatcher Wilkerson,        )
deceased,                           )
                                    )
     Plaintiff,                     )
                                    )
     v.                             )     1:04CV00143
                                    )
RENDON C. NELSON, M.D.,             )
BRYAN M. CLARY, M.D.,               )
DUKE UNIVERSITY HOSPITAL,           )
DUKE UNIVERSITY MEDICAL             )
CENTER, DUKE UNIVERSITY HEALTH      )
SYSTEM, t/a/d/b/a DUKE HEALTH,      )
DUKE UNIVERSITY SCHOOL OF           )
MEDICINE,                           )
                                    )
     Defendants.                    )

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

Plaintiff Donald Neil Wilkerson, as Administrator of the Estate of Sandra Hatcher Wilkerson, deceased ("Sandra Wilkerson"), brings this diversity action against Defendants Rendon C. Nelson, M.D. and Bryan M. Clary, M.D.; and health care providers Duke University Hospital, Duke University Medical Center, Duke University Health System, Duke Health, and Duke University School of Medicine (collectively, "Duke").[1] Plaintiff

---

[1] Plaintiff's naming of Defendant "Duke University Health System" is an apparent reference to Duke University Health
(continued...)

brings this wrongful death suit alleging negligence by Defendants in the medical treatment of Sandra Wilkerson. This matter is now before the court on Defendants' motion to stay this action and compel arbitration or, in the alternative, to dismiss the case for improper venue and Plaintiff's motion for oral argument. For the reasons set forth herein, Defendants' motion to stay pending binding arbitration will be granted and Plaintiff's motion for oral argument will be denied.

I.   BACKGROUND

Sandra Wilkerson, a Virginia resident, was diagnosed with benign liver tumors in 1995. On March 22, 1999, Mrs. Wilkerson visited the Private Diagnostic Clinic ("PDC")[2] at Duke, a North Carolina-based health care provider, and was presented a form typically furnished to and completed by patients while in the

---

[1](...continued)
System, Inc., a non-profit affiliate corporation of Duke University through which the University operates its clinical delivery services. Defendants contend the remaining institutional defendants have no separate legal existence apart from Duke University Health System, Inc., and thus are not proper parties. Nevertheless, the court has not been asked to resolve the matter and will not do so sua sponte.

[2] The Private Diagnostic Clinic, PLLC is a professional limited liability company that is separate and apart from Duke University Health System, Inc. PDC members hold positions on the faculty of the Duke University School of Medicine. PDC members may, if they choose, provide health services to patients through their affiliation with the PDC. Drs. Clary and Nelson are, and at all relevant times were, professors of surgery and radiology, respectively, at Duke University School of Medicine and PDC physician members.

2

waiting room.  The form contains three distinct sections, each with its own signature line.  The top section requests the patient's insurance information and contains an authorization for the insurance company to make payments to the PDC.  The bottom section seeks the patient's agreement to a statement of financial responsibility.  Sandwiched in the middle is a paragraph stating the patient's agreement to arbitrate all existing or future claims or issues arising out of or relating to medical treatment provided by Defendants.  The arbitration agreement provides:

> **AGREEMENT TO ALTERNATIVE DISPUTE RESOLUTION**
>
> In accordance with the terms of the United States Arbitration Act, I agree that any dispute arising out of or related to the provision of health care services to me by Duke University, the Private Diagnostic Clinic (PDC), or their employees, physician partners, and agents, shall be subject to final and binding resolution exclusively through the Health Care Claim Settlement Procedures of the American Arbitration Association, a copy of which is available to me upon request.  I understand that this agreement includes all health care services which previously have been or will in the future be provided to me and that this agreement is not restricted to those health care services rendered in connection with this admission or visit.  I understand that this agreement also is binding on any individual or entity claiming by or through me or on my behalf.  I understand that this agreement is voluntary and is not a precondition to receiving health care services.

(Defs.' Original Answer & Countercl. Ex. A.).  Mrs. Wilkerson filled in the requested information, signed, and dated all three sections.  The completed form was made a part of her medical records at Duke.

3

Beginning in 2002, Mrs. Wilkerson returned to Duke for treatment of her liver tumors. On April 11, 2002, Dr. Clary, a general surgeon practicing at Duke, performed surgery to remove the tumorous portion of Mrs. Wilkerson's liver. Despite the surgery, a postoperative pathology report indicated the existence of additional benign liver tumors. Dr. Clary, along with Dr. Nelson, a radiologist specializing in image-guided interventional procedures and also practicing at Duke, determined the best course of action for Mrs. Wilkerson was an ultrasound guided percutaneous radiofrequency ablation, a procedure to burn the tumorous area with an electrode. Dr. Nelson performed the ablation procedure on December 11, 2002. The procedure resulted in sudden liver failure, a liver transplant, and the death of Mrs. Wilkerson on December 17, 2002.

Plaintiff Mr. Wilkerson, in his capacity as estate administrator, brought this suit for negligence seeking wrongful death damages under North Carolina General Statutes § 18A-18-2. Plaintiff alleges Defendants acted negligently by failing to inform Sandra Wilkerson of the risks of the ablation procedure and alternative treatments available, by negligently deciding to perform and performing the ablation procedure, and by failing to acquire informed consent from Mrs. Wilkerson. Defendants answered Plaintiff's complaint denying negligence and bringing a counterclaim seeking a stay or, in the alternative, dismissal

with prejudice for improper venue based on the arbitration agreement.  Defendants renewed their counterclaim by way of a motion.  After Defendants' motion was fully briefed, Plaintiff moved for oral argument.  These motions are now pending before the court.

**II.  STANDARD OF REVIEW**

Plaintiff does not dispute the court's authority to stay these proceedings pending arbitration.  The arbitration agreement specifies that the United States Arbitration Act (often referred to as the Federal Arbitration Act ("FAA")), 9 U.S.C. §§ 1 <u>et seq.</u>, governs any dispute between the parties.[3]  Section 3 of the FAA provides "[i]f any suit . . . be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which such suit is pending . . . <u>shall</u> . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Therefore, the court must stay Plaintiff's claims if they are "referable" to arbitration, i.e., if the arbitration agreement is enforceable.

---

[3]  Even without the reference to the Federal Arbitration Act, it is clear the FAA would govern by its own terms because the medical treatment services Duke offers is part of an economic activity, in the aggregate, which involves interstate commerce.  <u>See</u> 9 U.S.C. § 2 (providing the FAA covers any "transaction involving commerce"); <u>Wickard v. Filburn</u>, 317 U.S. 111, 127-28, 63 S. Ct. 82, 90 (1942) (holding the effect of a particular type of activity on commerce should be considered in the aggregate).

5

To determine whether the arbitration agreement is enforceable, the court must apply the relevant state law principles that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44, 115 S. Ct. 1920, 1924 (1995) ("[A]rbitration is simply a matter of contract between the parties."); see also 9 U.S.C. § 2 (stating arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Here, the applicable state law is that of North Carolina,[4] which requires offer, acceptance, consideration, mutual assent, and the presence of no valid defenses for contract formation. See Copy Products, Inc. v. Randolph, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88 (1983); Snyder v. Freeman, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) ("The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds."). If the arbitration agreement is enforceable, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, 103 S.

---

[4] There is no dispute the law of North Carolina applies to the arbitration agreement. Both parties have cited North Carolina authority for their respective positions.

Ct. 927, 941 (1983). This reflects the "liberal federal policy favoring arbitration agreements" embodied in the FAA. Id. at 24.

**III. ANALYSIS**

Plaintiff argues the arbitration agreement is unenforceable because (1) it lacks consideration; (2) Defendants have not proven mutual assent; (3) it does not bind the claims of Mrs. Wilkerson's husband and child; and (4) it violates public policy. (Mem. Opp'n Defs.' Mot. Stay Proceedings Pending Arbitration and/or Dismiss Pl.'s Compl. Improper Venue ("Mem. Opp'n Defs.' Mot. Stay").) The court will consider each contention in turn.

**A. Whether the Agreement Lacks Consideration**

Plaintiff's first contention is the arbitration agreement is invalid because it was not supported by adequate consideration. (Id. at 3-5.) Plaintiff finds no consideration because Mrs. Wilkerson did not receive from Defendants any care or treatment in return for signing the arbitration provision, nor did she receive a reciprocal agreement to arbitrate any claims Defendants may have against her. Without these forms of consideration, Plaintiff argues the agreement must fail.

To be enforceable, a contract must be supported by adequate consideration. Investment Props. of Asheville, Inc. v. Norburn, 281 N.C. 191, 195, 188 S.E.2d 342, 345 (1972). "A mere promise, without more, is unenforceable." Id. Legal consideration is some benefit or advantage to the promisor or some loss or detriment to the promisee. Carolina Helicopter Corp. v. Cutter

7

Case 1:04-cv-00143-WO   Document 24   Filed 05/17/05   Page 7 of 16

Realty Co., 263 N.C. 139, 147, 139 S.E.2d 362, 368 (1964). Mutual promises are sufficient consideration to support a contract. See Penley v. Penley, 314 N.C. 1, 16, 332 S.E.2d 51, 60 (1985).

The arbitration does not lack consideration because it contains reciprocal obligations to be bound by any arbitration decision. While the court agrees with Plaintiff that the arbitration agreement does not contain a reciprocal agreement by Defendants to arbitrate any claims they may have against Mrs. Wilkerson, such an agreement is not required. The only reciprocal promise necessary for consideration is that both parties agree to be **bound** by the rules of the arbitration procedure and its result, irrespective of whose claims must be arbitrated. See Johnson v. Circuit City Stores, 148 F.3d 373, 378-79 (4th Cir. 1998) (reaffirming the holding in O'Neil v. Hilton Head Hosp., 115 F.3d 272, 274-75 (4th Cir. 1997), and finding "O'Neil implied merely an agreement on the part of the employer to 'be bound by the arbitration process'"); Martin v. Vance, 133 N.C. App. 116, 122, 514 S.E.2d 306, 310 (1999) (discussing several cases, including Johnson and O'Neil, and finding mutuality in the reciprocal agreement to be bound).

Here, there is ample evidence Mrs. Wilkerson received, in return for her promise to arbitrate her claims, a return promise by Defendants to be bound by the rules and outcome of any arbitration. Defendants or their agents proffered the arbitration agreement to Plaintiff for her acceptance and

8

signature. Defendants have consistently held themselves out to be bound and have shown their commitment to the arbitration process by seeking enforcement of the agreement in this action. Because Defendants asked Plaintiff to submit to binding arbitration and "cannot [now] turn around and slip out of the arbitration process [themselves]," the court finds sufficient consideration to enforce the agreement. O'Neil, 115 F.3d at 274. Nothing more is required by the law.

### B. Whether Defendants Have Met Their Burden of Showing Mutual Assent

Plaintiff's next contention is Defendants have not carried their burden of proving Mrs. Wilkerson "consciously or knowingly assented to the terms of the arbitration provision." (Mem. Opp'n Defs.' Mot. Stay at 7.) Plaintiff argues Defendants have failed to show mutual assent because the arbitration agreement was not independently negotiated, but was part of a three-section form. Plaintiff also argues Defendants have failed to show the mental capacity of Mrs. Wilkerson, a woman "suffering from a debilitating condition that may have compromised her ability to appreciate or understand the contents" of the form. (Id. at 6.)

Plaintiff is mistaken about the applicable standard for mutual assent. There is no general requirement that an arbitration clause be independently negotiated in North Carolina if contained in a contract covering other topics. The language Plaintiff cites from Routh v. Snap-On Tools Corp., 108 N.C. App. 268, 423 S.E.2d 791 (1992), has been held to apply only where a

9

promisor has failed to show his or her assent to arbitration by applying a signature where required.  See Martin v. Vance, 133 N.C. App. 116, 124, 514 S.E.2d 306, 311 (1999); Carteret County v. United Contractors of Kinston, Inc., 120 N.C. App. 336, 341-42, 462 S.E.2d 816, 820 (1995); Red Springs Presbyterian Church v. Terminix Co. of N.C., Inc., 119 N.C. App. 299, 301-02, 458 S.E.2d 270, 272-73 (1995).  Here, Plaintiff signed the form on the separate signature line below the arbitration clause.  Therefore, there is no claim of ambiguity as was at issue in Routh, and any language in the case which suggests a requirement of independent negotiation is inapplicable on these facts.

Plaintiff is also mistaken about which party carries the burden of showing Mrs. Wilkerson's capacity or incapacity.  One who signs a contract has a duty to read it and exercise reasonable care for her own protection.  Davis v. Davis, 256 N.C. 468, 471-72, 124 S.E.2d 130, 133 (1962).  As a result, the signer of a document is charged with full knowledge of its contents, Biesecker v. Biesecker, 62 N.C. App. 282, 285, 302 S.E.2d 826, 828-29 (1983), and with assent to the terms contained therein. Martin, 133 N.C. App. at 121, 514 S.E.2d at 310.  Furthermore, there is a legal presumption that every person of contracting age has the requisite mental capacity.  See Matthews v. James, 88 N.C. App. 32, 42, 362 S.E.2d 594, 601 (1987).

In this case, Defendants have shown that Mrs. Wilkerson, a legal adult, assented to arbitration by signing the form in the correct location.  Her age and her actions evidence her assent to

10

the terms of the agreement and her ability or capacity to give it.  The burden of rebuttal is with Plaintiff, who must present competent evidence to the contrary.  Because Plaintiff has failed to offer any such evidence, the court must reject Plaintiff's contentions regarding assent and capacity.

> **C. Whether the Agreement is Binding Upon Mrs. Wilkerson's Husband and Child**

Plaintiff's third contention is, even if the arbitration is binding upon Mrs. Wilkerson, it is not binding upon her husband and child because neither "read, assented to[,] or otherwise signed off on the arbitration provision."  (Mem. Opp'n Defs.' Mot. Stay at 7.)  While Plaintiff advances a sound premise, the argument lacks relevance because neither Mrs. Wilkerson's husband nor child has brought any claims in this suit.  The complaint is captioned "DONALD NEIL WILKERSON, as Administrator of the Estate of Sandra Hatcher Wilkerson, deceased" (Compl. at 1) and requests relief only for the estate.[5]  (Id. at 6.)  The only reference to Mrs. Wilkerson's husband is in his official capacity as administrator of her estate.  Mrs. Wilkerson's daughter, though

---

[5] Plaintiff's consistent practice of recaptioning this matter has not gone unnoticed.  All documents filed by Plaintiff after the complaint name Plaintiff as "DONALD NEIL WILKERSON, individually and as Administrator of the Estate of Sandra Hatcher Wilkerson, deceased."  (See, e.g., Mot. Admission Practice Pro Hac Vice Thomas R. Kline) (emphasis added).)  Recaptioning the matter does not have the effect of an amendment or an addition of any individual claims.  Those changes must be made through formal amendment within the time frame contained in the Rule 26(f) report.  See Fed. R. Civ. P. 15(a), 26(f).

11

set out as a survivor in the facts, is not named as a party and there are no claims asserted on her behalf.

Plaintiff is bound by the arbitration for two reasons. First, the arbitration agreement explicitly covers claims brought by "any individual or entity claiming by or through [Mrs. Wilkerson] or on [her] behalf." (Defs.' Original Answer & Countercl. Ex. A.) That language clearly includes an estate claim, which is brought through the deceased. Second, because Plaintiff's sole cause of action appears to be one for wrongful death, Plaintiff is bound by the arbitration agreement as a matter of law. Wrongful death actions brought under N.C. Gen. Stat. § 28A-18-2 are distinct from third-party actions, such as those for lack of consortium, because wrongful death actions exist if and only if the decedent could have maintained an action for negligence or some other misconduct if she had survived. DiDonato v. Wortman, 320 N.C. 423, 427, 358 S.E.2d 489, 491 (1987) (citing Nelson v. United States, 541 F. Supp. 816, 818 (M.D.N.C. 1982)). Thus, the estate's potential for recovery is legally derivative of Mrs. Wilkerson's own ability to recover. Because Mrs. Wilkerson's ability was limited in form to arbitration by her execution of the agreement with Duke, her estate is equally bound by the arbitration agreement.[6]

---

[6] Even if Mrs. Wilkerson's husband or daughter had brought individual claims, a stay pending arbitration would still be proper, regardless of whether those claims are also subject to
(continued...)

12

**D.   Whether the Agreement Violates Public Policy**

Plaintiff's last contention is the arbitration agreement is unenforceable because it violates public policy, an exception to the "sound public policy" favoring enforcement of contracts purposefully executed. Tanglewood Land Co. v. Wood, 40 N.C. App. 133, 141, 252 S.E.2d 546, 552 (1979). Plaintiff argues the agreement is one of adhesion because Mrs. Wilkerson was compelled to complete the form containing the arbitration agreement as a precondition for her treatment. (Mem. Opp'n Defs.' Mot. Stay at 10.) Plaintiff also argues the form's organization, namely the sandwiching of the arbitration agreement between two unrelated sections on insurance and financial responsibility, is procedurally unfair. (Id. at 10-11.)

Plaintiff's arguments are without merit. The arbitration agreement is not a contract of adhesion. Contracts of adhesion are "form contracts offered on a take-or-leave basis by a party with stronger bargaining power to a party with weaker power." Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 600, 111 S. Ct. 1522, 1530-31 (1991). While the arbitration agreement at issue is a form contract proposed by Defendants, the party with

---

[6](...continued)
arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20, 103 S. Ct. 927, 939 (1983). However, because potential third-party claims are not at issue, the court makes no findings of whether they would be bound by the arbitration agreement.

13

arguably stronger bargaining power, no patient benefits are conditioned on signing the arbitration agreement. In fact, the express language of the agreement makes its execution wholly voluntary. Additionally, even if the agreement were one of adhesion, the proper remedy would not be to invalidate the agreement. North Carolina courts, recognizing insurance contracts as those of adhesion, have not invalidated them, but merely subject them to greater scrutiny. See, e.g., Joyner v. Adams, 87 N.C. App. 570, 576-77, 361 S.E.2d 902, 905-06 (1987).

The arbitration agreement is not unconscionable. A contract is deemed unconscionable if the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Brenner v. Little Red School House, Ltd., 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981). Unconscionability requires both procedural and substantive unreasonableness or unfairness. See Rite Color Chem. Co. v. Velvet Textile Co., 105 N.C. App. 14, 19-20, 411 S.E.2d 645, 648-49 (1992). It may be that the arbitration agreement was drafted and positioned in a manner that would avoid drawing undue attention to its terms, and may constitute procedural unfairness. There is nothing, however, substantively unfair about binding

14

arbitration.[7]  If there were, there would not be the strong
policy favoring it.  As a result, even if Plaintiff could show
procedural unfairness, Plaintiff cannot show the requisite
substantive element to prove the agreement unconscionable.

The arbitration agreement is enforceable against Mrs.
Wilkerson and likewise against Plaintiff's claim for wrongful
death.  Plaintiff has failed to establish any contract defenses
that would otherwise invalidate the agreement.  Having found the
agreement enforceable, this matter is referable to arbitration
under the FAA.  Defendants' motion to stay these proceedings
pending binding arbitration will be granted.

**IV. CONCLUSION**

For the reasons stated herein,

IT IS ORDERED that Defendants' Motion to Stay Proceedings
Pending Arbitration [12] is GRANTED.  These proceedings are
hereby stayed pending binding arbitration.

IT IS FURTHER ORDERED that Plaintiff's Motion for Oral
Argument on Defendants' Motion to Stay Proceedings and Compel

---

[7] Plaintiff has intimated that the one-sidedness of the arbitration agreement constitutes substantive unfairness. However, Plaintiff has acknowledged "it is difficult to imagine any of the defendants ever pursuing any claims against Ms. Wilkerson arising out of the care and treatment that Ms. Wilkerson received from them."  (Mem. Opp'n Defs.' Mot. Stay at 4.)  That said, there seems nothing unfair about Mrs. Wilkerson's unilateral agreement to arbitrate her claims against Defendants because she had nothing to gain from a return promise to arbitrate.

15

Arbitration [22] is DENIED. The parties' briefs adequately state their respective positions and supporting legal authority.

This the 17th day of May 2005.

　　　　　　　　　　　　　　　　　／s／ _____
　　　　　　　　　　　　　　　　　United States District Judge